IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GGA-PC, and BEAZLEY INSURANCE COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERFORMANCE ENGINEERING, INC., and ROBERT ALLEN WHORLEY, P.E.; <br><br> Defendants. | 8:16CV567 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on the plaintiffs' motion and amended motions to strike affirmative defenses, or alternatively, for partial judgment on the pleadings, Filing Nos. 20, Filing No. 22, and Filing No. 24.[1] This is an action for damages for breach of contract, negligence, and gross negligence in connection with engineering design services. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

I. FACTS

Plaintiff GGA-PC ("GGA") is an architectural firm, and plaintiff Beazley Insurance Company ("Beazley") is its insurer. Defendant Performance Engineering, Inc., ("Performance") is an engineering firm and defendant Robert Allen Whorley, P.E. ("Whorley") is an engineer with the firm. The plaintiffs allege that Seward County, Nebraska hired GGA to design a Law Enforcement Center and to provide construction documents for the project. GGA then entered into a contract with defendant Performance that required Performance to provide the structural engineering design for

---

[1] Because the most recent motion supersedes the earlier motions, the earlier motions will be denied as moot.

the Project and to prepare structural documents. Performance subsequently submitted the documents to GGA, sealed with defendant Robert Allen Whorley's professional engineer seal. The plaintiffs allege that structural design services the defendants provided and the structural documents they prepared were inadequate and improper. They allege that as a result of the defendants' inadequate and improper structural design, extra work had to be performed on the project, including strengthening beams, reinforcing structural connections, modifying footings, performing additional surveying, levelling concrete floors installing an additional supports, columns, vapor barriers, roof drains and roof insulation.

As the result of the defendant's breach of contract and negligence, plaintiff GGA alleges it has suffered damages in the amount of approximately $82,000 in employee costs, independent engineering fees and attorney fees for responding to change order proposals and to claims for the extra work. Plaintiff Beazley issued an insurance policy to GGA, and alleges it has been damaged in the amount of $183,766 for payments in performance to its obligations to GGA under the policy. *See* Filing No. 1, Complaint.

In their Answer, the defendants admit that Performance entered into a contract with GGA, but deny liability under any theory. They deny that the documents submitted by Performance contained structural defects, or that the plaintiffs suffered damages as a result of those defects. The defendants raise the defense of lack of subject matter jurisdiction asserting that because "GGA agreed to limit the liability of Defendants to $50,000" under the terms of the parties' contract, the plaintiffs cannot meet the amount in controversy required for the court's exercise of diversity jurisdiction. Defendants also assert as an affirmative defense that the plaintiffs are bound by the limitation of liability

2

clause contained in the contract and the defendants are thus not liable for any damages beyond $50,000. See Filing No. 17, Answer. The limitation of liability clause in the contract is set forth in the defendants' Answer as follows:

> Limitation of Liability: In order for the client to obtain the benefits of a fee which includes a lesser allowance for risk funding, the client agrees to limit PE's [Performance] liability arising from PE's professional acts, errors or omissions, such that the total aggregate liability of PE shall not exceed PE's total fee for the services rendered on this project, or the amount of fifty thousand dollars ($50,000.00), whichever is less.

Filing No. 17, Answer at 7-8.

The plaintiffs move to strike the defendants' affirmative defenses of lack of subject matter jurisdiction and the limitation of their liability and, alternatively, seek a judgment on the pleadings with respect to the issues. The plaintiffs argue the defendants' affirmative defenses fail as a matter of law because the limitation of liability provision on which the defendant rely is void and unenforceable under Nebraska law. Neither party has submitted a copy of the contract at issue.

II. LAW

Under Fed. R. Civ. P. 12(f), courts may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts enjoy liberal discretion to strike pleadings under this provision. *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Striking a party's pleading, however, is an extreme and disfavored measure. *Id.* A motion to strike an affirmative defense may be granted where the defense has no basis in law, is insufficient as a matter of law, and the moving party will suffer prejudice in the absence

of the court granting its motion to strike. See *United States v. Dico, Inc.*, 266 F.3d 864, 880 (8th Cir. 2001).

As a general rule, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). When reviewing a Rule 12(c) motion, the Court must view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.

A federal court has jurisdiction over a case where the parties are citizens of different states and the amount in controversy, excluding interest and costs, is greater than $75,000. 28 U.S.C. § 1332(a). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)); *see also James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 834 (8th Cir. 2005) (noting court's obligation to raise the issue *sua sponte*).

A complaint can be challenged for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all

of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.*; *see Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990) (stating "the non-moving party receives the same protections [for facial attacks under Rule 12(b)(1)] as it would defending against a motion brought under Rule 12(b)(6)") (citation omitted); *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (noting that the court may generally consider documents attached to a pleading); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). When the jurisdictional issue is bound up with the merits, the court need not decide the jurisdictional issue. *Osborn*, 918 F.2d at 730.

"In this circuit, the amount in controversy is measured by the value to the plaintiff of the right sought to be enforced." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821 (8th Cir.2011). A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (quoting *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance*, LLC, 620 F.3d 926, 931 (8th Cir. 2010). "The legal certainty standard is met where the legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Schubert,* 649 F.3d at 822 (alteration in original) (citations and internal quotation marks

5

omitted). "In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

"[J]urisdiction 'is measured by the amount properly pleaded or as of the time of the suit, not by the end result.'" *Id.* (quoting *Zunamon v. Brown*, 418 F.2d 883, 887 (8th Cir. 1969). The legitimacy of the amount in controversy is judged "'based on information known to the court at the time jurisdiction [is] challenged.'" *Kramper Family Farm P'ship,* 393 F.3d at 834 (quoting *Kopp,* 280 F.3d at 885).

The Nebraska anti-indemnification statute, Neb. Rev. Stat. § 25-21,187(1) provides, in relevant part:

> In the event that a public or private contract or agreement for the construction, alteration, repair, or maintenance of a building, structure, highway bridge, viaduct, water, sewer, or gas distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction contains a covenant, promise, agreement, or combination thereof to indemnify or hold harmless another person from such person's own negligence, then such covenant, promise, agreement, or combination thereof shall be void as against public policy and wholly unenforceable.

*Id.* Also, the Nebraska Supreme Court has held that public policy prevents a party from limiting its damages for gross negligence or willful and wanton misconduct. *New Light Co. v. Wells Fargo Alarm Servs.*, 525 N.W.2d 25, 30-31 (Neb. 1994) (balancing the parties' right to contract against the protection of the public). The determination of whether a contract violates public policy is a question of law. *Ploen v. Union Ins. Co.*, 573 N.W.2d 436, 443 (Neb. 1998).

Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved. *New Light Co.*, 525 N.W.2d at 30; *see Hearst-Argyle Properties, Inc.*

6

*v. Entrex Commc'n Servs., Inc.*, 778 N.W.2d 465, 471 (Neb. 2010). "'The greater the threat to the general safety of the community, the greater the restriction on the party's freedom to contractually limit the party's liability.'" *Hearst-Argyle Properties*, 778 N.W.2d at 471 (quoting *New Light Co.*, 525 N.W.2d at 27). For example, a public policy prohibition will not extend to a waiver of subrogation provision, even though the provision is effective against claims for gross negligence. *See Lexington Ins. Co. v. Entrex Comm. Servs.*, 749 N.W.2d 124, 131 (Neb. 2008) (explaining that the danger present with an exculpatory clause is that an injured party may be unable to recover, and stating that the danger is not present with respect to a waiver of subrogation clause because the waiver applies only to losses covered by insurance, so there is no risk that an injured party will be left uncompensated). Also, waivers of subrogation serve other important policy interests that are not met by pure exculpatory clauses, because they encourage parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity. *Id.*; *see also Hearst-Argyle*, 778 N.W.2d at 472 (noting that a clause that requires a builder to procure insurance and to pay costs not covered by deductibles serves many of the same public policy interests as a waiver of subrogation clause in that "it encourages the anticipation of risks and the procurement of insurance, and brings those risks under the all-risk builder's property insurance").

A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. *Hearst-Argyle Properties, Inc. v. Entrex Commc'n Servs., Inc.*, 778 N.W.2d 465, 470 (Neb. 2010). And a contract is viewed as a whole in order to construe it. *Id.* Whatever the construction of

7

a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses. *Hearst-Argyle Properties, Inc. v. Entrex Commc'n Servs., Inc.*, 778 N.W.2d 465, 470 (Neb. 2010).

### III. DISCUSSION

The defendants assert that if the limitation of liability clause in the contract is valid and enforceable, the plaintiffs' damages in this case are limited to $50,000 and do not satisfy the jurisdictional threshold. The defendants' lack of jurisdiction defense and argument is bound up with the merits of the case and is dependent on construction of the contract as a whole. The court cannot resolve the issue of the enforceability of the limitation of liability clause on the record before it. As noted, neither party filed a copy of the contract. The effect of any contractual conditions on the amount in controversy is closely related to the underlying claims.

An analysis of the enforceability of the limitation of liability clause cannot be performed without considering the contract as a whole. The limitation of liability clause could be effected by and related to other provisions of the contract such as other exculpatory clauses, insurance procurement clauses, subrogation waivers or an indemnification clause. Public policy considerations require determinations of the facts and circumstances of the agreement and the parties involved—whether the parties are sophisticated and whether the contract involved an arms-length transaction. These issues await further factual development.

It does not appear to a legal certainty that the plaintiffs' claim is really for less than the jurisdictional amount. At this point, the defendants have presented a facial challenge to the court's subject matter jurisdiction. At the pleading stage, the court must

accept as true the plaintiffs' allegations that they have sustained damages amounting to more than the $75,000 jurisdictional threshold.  Accordingly, the court finds the motion to strike the defendants' affirmative defenses, or alternative motion for a judgment on the pleadings should be denied at this time without prejudice to reassertion in a properly supported motion for summary judgment.

IT IS ORDERED:

1. The plaintiffs' motion and amended motion to strike affirmative defenses, or alternatively, motion for partial judgment on the pleadings (Filing Nos. 20 and 22) are denied as moot.

2. The plaintiffs' second amended motion to strike affirmative defenses, or alternatively, motion for partial judgment on the pleadings (Filing No. 24) is denied.

3. The parties shall submit a revised Rule 26(f) report within seven days of the date of this order.  *See* Filing No. 29.

Dated this 26th day of June, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge